[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4411
The Petitioner Anthony J. Borrelli brings this petition for a Writ of Habeas Corpus by a revised petition dated May 2, 1996. The Respondent filed a Return to said petition. The Petitioner was originally charged with the crimes of Kidnapping in the First Degree, Unlawful Restraint in the First Degree, Threatening, Criminal Mischief in the Third Degree, Assault in the Second Degree and Failure to Appear in the First Degree. The actions which resulted in the aforementioned offenses occurred on December 30, 1990. In a second file the Petitioner was charged with Breach of Peace and Failure to Appear in the Second Degree. The Breach of the Peace offense occurred on April 10, 1991.
The victim of all of these offenses was the Petitioner's wife, Patricia Borrelli. On March 26, 1992 the Petitioner was convicted after a jury trial of the following offenses: Kidnapping in the First Degree (§ 53a-92 (a)(2)(A)), Assault in the Second Degree (§ 53a-60 (a)(2)), Criminal Mischief in the Third Degree (§ 53-a-117(a)(1)(A)), Threatening (§53a-62 (a)(1)) and Breach of Peace, (§ 53a-181 (a)(1)). For these offenses the Petitioner received a total effective sentence of twenty years incarceration execution suspended after ten years with five years probation. The Petitioner applied for Sentence Review and on December 17, 1992 the Sentence Review Board increased the Petitioners sentence to twenty years incarceration execution suspended after serving fifteen years, probation for five years.
The Petitioner was represented by Attorney Carl Eisenmann during the trial, sentencing hearing, appeal and sentence review of the above offenses.
The Petitioner alleges that his attorney was ineffective in his representation of him during the trial, at the sentencing hearing, at the sentence review board and on his appeal. The complaining witness and victim of each offense was the Petitioner's wife. She gave a written statement to the Torrington Police on December 30, 1990 which was used as the basis for most of the charges being placed against the Petitioner. Prior to trial Mrs. Borrelli stated that she made up the statement she gave to the Torrington Police in hopes that the Petitioner would be arrested and given treatment for his drug problem. She testified to that effect at hearing on a Motion to Dismiss the CT Page 4412 charges which was filed by the Petitioner. The Motion to Dismiss was denied.
The Petitioner testified during this habeas hearing. The Petitioner and his wife still lived together up to and including the time of his trial. The Petitioner testified that when he asked Attorney Eisenmann what his defense would be he was told "denial". Prior to trial the State's Attorney stated he was going to present evidence on "Battered Woman Syndrome" according to the Petitioner.; Knowing this the Petitioner felt that his attorney should have had the victim examined by a psychiatrist or psychologist which he did not do.
The Petitioner also claims his attorney and his staff never did any investigation relative to the Breach of the Peace charge nor did he file any motions relative to this charge. However, Attorney Eisenmann did object to the Breach of the Peace case being consolidated and tried together with the other offenses but that objection was denied by the court.
The Petitioner also testified that Attorney Eisenmann did not view the location where the felonies were committed. The Petitioner also complains that his attorney did not call Arthur Cox, Muriel Cox, Rancy Quidaits and Ralph Penland as witnesses as he requested. According to the Petitioner Attorney Eisenmann told him he did not need these family members to testify. Attorney Eisenmann only called one family member to testify at the trial namely Carrie Penland who was the victim's daughter. The Petitioner also complains that his attorney did not call Detective Smednik of the Torrington Police Department who could have testified to the fact that four months previous the Petitioner's wife was involved in an incident where a knife was displayed. Also the Petitioner wanted a Motion for a Change of Venue filed and his attorney did not do so. The Petitioner testified that he thought he should get an expert to counteract the testimony of Doctor Evan Stark relative to the Battered Woman Syndrome allegedly suffered by his wife. The Petitioner testified that Attorney Eisenmann just pushed aside that suggestion.
The Petitioner testified that he wanted to take the witness-stand and testify at trial. He stated he told his attorney he had previous felony convictions. The Petitioner testified Attorney Eisenmann told him he had talked it over with his (Petitioner's) wife and they both agreed that it would be best if the Petitioner did not testify. Also the Petitioner was not satisfied with the CT Page 4413 cross examination that was done by his attorney on Torrington Police Officer Dale Olofson.
The Petitioner was not satisfied with Attorney Eisenmann's representation of him at the sentencing hearing. Prior to the sentencing hearing the Petitioner was examined by a doctor. However, between the date of conviction and the day of sentencing the Petitioner claims he did not meet with his attorney. The Petitioner claims that his attorney did not discuss things in his background with him that might have lowered his sentence.
Attorney Eisenmann also represented the Petitioner in the appeal of his convictions. The Petitioner testified he told Attorney Eisenmann that he did not want him to represent him on the appeal of his convictions. He testified Attorney Eisenmann stated to him that he was "the Joe DeMaggio of Appeals" and that the Petitioner's appeal was already started. The Petitioner stated he and his attorney discussed the issues of the appeal. According to the Petitioner Attorney Eisenmann said he had thirty pages to use for his appellate brief and he was going to use the testimony of Doctor Stark and his wife's recantation of her statement as issues on the appeal. The Petitioner also stated his attorney told him that it was legal for his two cases to be tried at the same time.
The Petitioner was also represented by attorney Eisenmann at his sentence review hearing. He claims Attorney Eisenmann was ineffective as his counsel at this hearing. The Petitioner testified that Attorney Eisenmann warned him not to go to sentence review but he did not say why he should not go before that tribunal. The Petitioner stated his wife was to appear before the Sentence Review Board but could not because her car broke down and when the Sentence Review Board learned of this they offered to continue the matter and the Petitioner declined the offer of a continuance. As stated hereinbefore the Sentence Review Board increased the Petitioner's period of incarceration from ten to fifteen years.
Attorney Carl Eisenmann testified at this hearing. He stated he represented the Petitioner at all stages of his matter. Attorney Eisenmann testified that he did not recall the Petitioner asking him to have a special public defender appointed to represent him. Attorney Eisenmann said there was some discussion with Mrs. Borrelli about this. He said he advised the Petitioner that a special Public Defender is appointed where CT Page 4414 there is a conflict of interest, but that in this case there was no conflict of interest in representing him (Petitioner).
Attorney Eisenmann stated he communicated with the Petitioner often by phone, letter or in person. He stated his investigator visited the Petitioner's home where the felonies occurred and described it to him. Attorney Eisenmann said Investigator Casey may had drawn a sketch of the crime scene at the Petitioner's home a yellow pad for him. As to the location where the Breach of the peace took place Attorney Eisenmann stated he was familiar with the area. Attorney Eisenmann testified that his investigator met with every witness the Petitioner gave them and that he himself also met with some of those witnesses.
Attorney Eisenmann said the Petitioner defense was that the victim, his wife, had recanted her statement and denied the offenses ever took place. She gave said statement with the hope that the Petitioner would be arrested and that he would then be placed in a drug program. Attorney Eisenmann testified he knew the state was going to bring in Dr. Evan Stark as an expert to testify on the "battered woman syndrome". He testified that after a lot of research he felt the best way to combat Dr. Stark's evidence was to attempt to prevent him from testifying. However the trial judge allowed Dr. Stark to testify. Attorney Eisenmann testified he did not have the victim, Mrs. Borrelli, tested to see if she met the "battered woman syndrome" standard because she had recanted her statement and was a willing defense witness and his investigator told him everyone he spoke with including the State's attorney Investigator, a Torrington Police Officer, the Victim's Advocate and defense witnesses felt she was a battered woman. Attorney Eisenmann testified if he retained an expert witness to counteract Dr. Stark it would have become a battle of experts and that defense attorney do not want to get into a battle with experts. He stated Dr. Stark is not the type of expert a defense attorney would counteract with another expert. Dr. Stark never examined the victim.
Attorney Eisenmann testified that at one point his investigator said the Petitioner and his wife had a surprise for him. When he spoke to Mrs. Borrelli she stated that the Petitioner, was the victim and that she tied up the petitioner, kidnapped him, assaulted him and cut up her own clothes.
Attorney Eisenmann testified that he did not file a Motion for a Change of Venue but he believed he reserved his right to do CT Page 4415 so should the situation, have arisen where such a filing would be appropriate. He stated this case did not meet the criteria for a change of venue to be granted.
Attorney Eisenmann stated he discussed plea bargains with the Petitioner and told him every defendant has to make three choices, namely whether to plead guilty, be tried by a court or a jury, or testify or not if you go to trial.
Attorney Eisenmann testified that no one approached him at the sentencing hearing to testify on behalf of the Petitioner. He stated that he provided the Petitioner with his Presentence Investigation Report as soon as he received it which was the day before the actual sentencing.
Attorney Eisenmann also testified that he advised the Petitioner not to seek a review of his sentence by the Sentence Review Board because he had received the minimum period of incarceration he could receive for the crimes for which he was convicted. The Petitioner did not follow that advice.
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992). Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170,174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v.Warden, supra; Hull v. Warden, supra; Copas v. Warden, supra, CT Page 4416 683-84.
"`To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citations omitted; internal quotation marks omitted). Siano v.Warden, supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55." Davis v. Warden, 32 Conn. App. 296, 301-303,629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993). Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701, 702 (1995).
After hearing the evidence this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated May 2, 1996, and as to any of the allegations he made during this hearing. He has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge